## MEEKER, KNOX & CO. v. F. W. VREDENBURG & CO.

Where a cargo of goods, deposited in a government warehouse, is sold, the sale is perfect by the consent of the parties, the price having been paid, and the delivery made, fictitiously, by the transfer of the warehouse receipt.

The Federal Government does not recognize the validity of a transfer of property deposited in one of its warehouses, before the payment of the Customhouse duties; but the importer is not debarred from disposing of property in the meantime, although it remains in the warehouse for the purpose of securing the collection of the duties.

Where property so situated was sold, but for the mutual convenience of both vendor and vendee, was suffered to remain in the warehouse, the vendee not requiring the importer to pay the duties and perfect the delivery, for a certain time, at the end of which time it was found that the warehouseman had made away with a portion of the goods—*Held:* That the property was at the risk of the vendee, and that in the absence of any want of care on the part of the vendor, he is not responsible.

APPEAL from the Fifth District Court of New Orleans, *Eggleston*, J.

*T. G. & A. G. Semmes*, for plaintiffs and appellants. *Mott & Fraser*, for defendants and appellees.

VOORHIES, J. The plaintiffs purchased of defendants a cargo of salt, consisting of 8021 sacks (6996 coarse, and 1025 fine salt).

The salt had been imported by *F. W. Vredenburg & Co.*, and deposited on storage in the Brooklyn Warehouse, kept by *Thomas J. Casey*, and bonded as a United States warehouse. The importers, availing themselves of the privileges allowed in such cases by the Acts of Congress, had stored the cargo of salt, without paying the duties in the meantime. (10th Statutes at large, p. 270.)

When the salt was sold to the plaintiffs, the defendants, in whose name had issued the warehouse receipt, transferred the same to the former, who thereupon paid the price stipulated,—at 60 cents the sack round. The sale was of "*the cargo of L salt per Echo, now stored at the Brooklyn Warehouse, consisting of about* 6990 *sacks coarse, and* 1025 *do. fine, at sixty cents per sack round, cash, with benefit to purchasers of any unexpired storage.*"

Subsequently, the plaintiffs pledged this cargo of salt to the house of *Barelli & Co.*

Two months having elapsed since the date of the sale, the defendants paid the

duties, as importers, and procured for the plaintiffs a withdrawal permit, by which the salt might be removed from the warehouse. But the latter received only the coarse salt and 100 sacks of fine salt, the rest having been fraudulently removed by the warehouseman.

This suit was instituted for the purpose of compelling the defendants to pay the value of the 925 sacks of salt, at the date of the issuance of the withdrawal permit.

The question presented for adjudication is, whether the salt was, at the date of the sale, at the risk of the vendors, or of the vendees.

The sale was perfect by the consent of the parties, the price having been paid, and the delivery made fictitiously by the transfer of the warehouse receipt. C. C. 2431; *Martin* v. *His Creditors*, 14 An. 393, and 15 An. 165.

It is true that the Federal Government does not recognize the validity of the transfer of property so situated, before the payment of the customhouse duties; but this is for the sole purpose of simplifying the collection of the revenues. The importer is not debarred from disposing of his property in the meantime; but, as a consequence, it remains in the warehouse, as the importer's property, for the purpose of securing the collection of the duties.

Assuming, therefore, that the cargo of salt, notwithstanding the payment of the price and the transfer of the warehouse receipt, was at the risk of the vendors, are they responsible for the criminal conduct of the warehouseman in making away with a portion of the cargo?

The Code provides that, " until the thing sold is delivered to the buyer, the seller is obliged to guard it as a faithful administrator; and if, through want of this care, the thing is destroyed, or its value diminished, the seller is responsible for the loss." Art. 2443. And further : " He is released from this degree of care, when the buyer delays obtaining the possession; but he is still liable for any injury which the thing sold may sustain through gross neglect on his part." Art. 2444.

These rules govern when the seller has not been put in default for delivery; but in cases of default, there are other rules.. C. C. 1904, 2216, 2445.

It is not pretended that the loss of the property is, in the least, attributable to the want of care of the vendors. Indeed, it is shown that the salt was suffered to remain in the bonded warehouse, as much for the convenience and benefit of the vendees, as for the advantage of the vendors. Whilst the latter obtained time to pay the duties, the former had their property conveniently stored, as usual in such cases, " with benefit of unexpired storage," under the terms of the contract.

The plaintiffs could, at any time, have called upon the defendants to take the necessary steps to perfect the delivery; but have chosen to avail themselves of the unexpired storage, and to use the property as their own by pledging it to third persons. The defendants, to whom no want of care in the premises can be imputed, are, therefore, not answerable for the loss which has occurred.

Judgment affirmed.

MERRICK, C. J., concurring. If the testimony of *Hugh O. Donnell* be rejected the plaintiff has no case, because it is proven that the whole quantity of salt was deposited in the warehouse, and there is no sufficient evidence to rebut the presumption that plaintiffs have received the whole quantity. They have accepted the transfer of the warehouse receipt, and paid the price. The return of the assistant keeper to the Customhouse on the 22d April, 1858, shows that the im-

MEEKER
*v.*
VREDENBURG.

porters were permitted to withdraw the whole 8021 sacks, and the plaintiffs surrendered to the warehouse keeper the permit for the whole. It was incumbent upon the plaintiff at least to show that there was a deficiency of quantity at this time, and this he cannot do unless he resort to the testimony of *Donnell.* If we give credence to *Donnell's* testimony, it does indeed prove the deficiency, but it also shows that it took place by the unlawful withdrawal of the salt from the bonded warehouse of the government between the date of the sale of the salt by the defendants to the plaintiffs, and the payment of the duties by the defendants, at which time the salt had first been placed under the free control of the plaintiffs. It is true that it was incumbent upon the defendants, as vendors, to pay the duties upon the salt, and thus perfect the delivery. But this act to be performed on the part of the defendants did not prevent the sale from being complete at the time the price was agreed upon and paid, and the warehouse receipt was transferred to the plaintiffs. For, as the District Judge has correctly said, the sale was *en bloc.* There was a single object sold, viz, the cargo of salt of the ship Echo, stored in the bonded warehouse of the government. And the sale was perfect so soon as there was a concurrence of wills upon the object, and the price to be paid for the same, and the property of the thing was transferred to the purchaser, and from that time it was at his risk, unless the defendant had been put in default for not delivering the same. C. C. 2431, 2442, 5443, 2445.

The defendants were permitted by the plaintiffs to defer the payment of the duties until such time as the plaintiffs might desire to remove the salt. This did not render the sale any the less perfect as between the parties; nor did it prevent the property in the salt from vesting in the vendees. The defendants were only bound to redeem the salt, and this perfected its delivery. "Where the object sold is out of the vendor's possession, he must redeem it at his cost, and deliver it to the buyer, unless it be differently agreed between the parties, or unless it evidently appears from the contract that the buyer himself has undertaken to reclaim it." C. C. 2458. In this case, all that was contemplated that the defendants should do, was to pay the duties, which they did, and thus complied with their contract. Not having been in default as to the contract of sale, nor guilty of any negligence on their part, they cannot be held responsible for any loss which has happened to the purchaser by the destruction or theft of the thing sold.

The delay spoken of in Article 2445 is the being *in mora,* as is quite apparent from the French text and other Articles of the Code. See 1904 and 2216.

I therefore concur in the decree in this case.

LAND, J., absent.